### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 21-cr-377-BAH** |
| | : | |
| **ANTHONY ROBERT WILLIAMS,** | : | |
| | : | |
| **Defendant.** | : | |

### THE GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE OPPOSING ADMISSION OF YOUTUBE VIDEO

The United States of America hereby files it Response in Opposition to Defendant's Motion in Limine Opposing Admission of YouTube Video and states as follows

### I.  BACKGROUND

Defendant Anthony Robert Williams (Defendant) is charged in this case with violating the following laws on January 6, 2021 during the Capitol riots: 1) 18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of an Official Proceeding) and aiding and abetting; 2) 18 U.S.C. § 1752(a)(1)(Entering and Remaining in a Restricted  Building or Grounds); 3) 18 U.S.C. § 1752(a)(2)(Disorderly and Disruptive Conduct in a Restricted Building or Grounds); 4)  40 U.S.C. §  5104(e)(2)(D)(Disorderly  Conduct  in  a  Capitol  Building);  and  40  U.S.C.  § 5104(e)(2)(G)(Parading, Demonstrating, or Picketing in a Capitol Building).  *See* ECF, 13.

During the riot, Defendant recorded himself on the Northwest stairs just minutes after rioters broke through a police line that had been formed there.   At approximately 2:18 p.m., Williams entered the Capitol Building through the Senate Wing doors.    After entering the Capitol Building, Williams and other rioters proceeded to the Crypt where they broke through another police line. Williams then went to the Rotunda and remained there until the police forced him out of the Capitol Building.

The case is currently scheduled for trial on June 27, 2021. The Government anticipates introducing several video clips as evidence. On May 5, 2022, the Government produced to Defendant a YouTube video that depicts events that occurred inside the Capitol and on Capitol grounds in areas where Defendant was present. The Government proposed to admit a segment of the video from 9:37 to 13:00 minutes. This segment depicts when rioters overran a police line on the Northwest stairs, confronted them again at the top of the stairs at a bike rack, and overran the police again. The video continues with rioters then breaching the Senate Wing doors by breaking windows and busting open the doors there. The Government also proposed to offer a much shorter segment of the video, from 9:37 to 10:24 minutes, which concludes when the rioters and police are engaged at the bike racks at the top of the Northwest stairs. Both segments are relevant because Defendant's route into the Capitol building match the path shown in the video. Defendant went up the Northwest stairs and entered the Capitol through the Senate Wing door shortly after the events in the video were recorded although he does not appear in this video. The video skips in recording at 10:25 minutes, which makes the portion from 9:37 to 10:24 minutes a logical segment to offer into evidence.[1]

Rioters breached the police line on the Northwest stairs of the Capitol at approximately 2:09:48 p.m. CCTV video capture that activity as shown below in Image 1.

---

1  The Government would offer that the entire segment of the video, from 9:37 to 13:00 minutes can be admitted, but the determination of what weight to afford the evidence and its authenticity, even with the skip in the video, is reserved for the jury. *See United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016)("ultimate resolution of the evidence's authenticity is reserved for the jury. *See* Safavian, 435 F.Supp.2d at 38. The court "must admit the evidence if sufficient proof has been introduced to support a finding that the fact does exist," and "in spite of any issues the opponent has raised about flaws in the authentication" (which only "go to the weight of the evidence instead of its admissibility")"



**Image 1**

As shown below in the screen shots from CCTV, several USCP officers were at the scene at 2:08 p.m. shortly before their line was broken at 2:09 p.m. They can testify to the actions that occurred there.



**Image 2**



**Image 3**

Less than three minutes after the breach of the police line occurred on the Northwest stairs at 2:09:48 p.m., Defendant is captured on CCTV at 2:11:29 p.m. (Image 4) and then at 2:12:24

p.m. (Image 5) as he proceeds up the stairs with the crowd as the police retreat.



**Image 4**



**Image 5**

An overhead CCTV video, then captures Defendant running to the top of those stairs at 2:13:54, shortly after the bike rack was breached there.



**Image 6**

The YouTube video shows the police run up the stairs from a different perspective than the CCTV video. The police and rioters eventually clash seconds later at the top of the stairs at a line of bike racks.

6



**Image 7**



**Image 8**

As shown in the YouTube video, several United States Capitol Police (USCP) officers were recorded in this video, and others were in the area, who may not have been recorded, any of whom could testify to the accuracy of the events depicted in the YouTube video.

Defendant's own video can also authenticate the YouTube video.   He recorded himself on the Northwest stairs at approximately 2:16 p.m. Below are screenshots of portions of that video when Defendant proclaims, "[w]e just stormed the stairs of the Capitol, pushed the cops back . . ."   and he pans down the Northwest stairs.   In the background of these images, rioters are visible proceeding up the Northwest stairs, as were rioters shown doing the same in the CCTVs videos above and the YouTube video. Defendant's own statements of having "stormed the stairs of the Capitol" and "pushed the cops back" on these stairs also corroborates what was shown in the CCTV and YouTube videos. With that, there are three sources of authenticating the YouTube video: 1) comparison of the CCTV videos with the YouTube video; 2) comparison of the YouTube video with Defendant's video; and 3) testimony from a USCP officer who was present who would testify that the YouTube video from 9:37 to 10:24 minutes is a fair and accurate recording of the events that occurred on the Northwest stairs.



**Image 9**



**Image 10**

II.    <u>**ARGUMENT**</u>

"Authentication and identification are specialized aspects of relevancy that are necessary conditions precedent to admissibility." *United States v. Rembert*, 863 F.2d 1023, 1026 (D.C. Cir. 1988) quoting *United States v. Blackwell*, 694 F.2d 1325, 1330 (D.C. Cir. 1982). "All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what its proponent claims it to be." *In re: Japanese Elec. Prods*., 723 F.2d 238, 286 (3d Cir. 1983), *rev'd on other grounds, Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574 (1986).    As the Third Circuit Court of Appeals has noted, "The burden of proof for authentication is slight."    *McQueeney v. Wilmington Trust Co*., 779 F.2d 916, 928 (3d Cir. 1985).    Once a *prima facie* showing has been made, if authenticity is disputed, the dispute is to be resolved by the jury.    *United States v. Goichman*, 547 F.2d 778, 784 (3d Cir. 1976); *United States v. McGlory*, 968 F.2d 309, 328-29 (3d Cir. 1992).    Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement.

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992). *See also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]") (citation and quotation marks omitted). Rule 901

10

"requires only a prima facie showing of genuineness and leaves it to the jury to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases). *See also, e.g., United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (*quoting United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a prima facie showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017).

The *Blackwell* case involved a prosecution for unlawful possession of firearms. The photographs in question depicted the defendant holding a firearm, apparently the same as one of the guns seized at the time of his arrest. The prosecution had obtained the photographs as the result of a search of the same room in which the firearms were found.   No witness could testify as to when the photographs were made, where they were made, by what process, or whether they fairly and accurately depicted any particular scene on any particular date. The detective who conducted the search did testify that the details of the pictured weapon and the background interior were similar to the details of the weapon and room in question.   In upholding the admission of the photographs, the United States Court of Appeals for the District of Columbia utilized the same authentication and identification analysis as they would have with reference to the contents of any documentary evidence.   *Rembert*, 863 F.2d at 1026.   That is, the Court required only that "the proponent of documentary evidence make a showing sufficient to permit a reasonable juror to find

11

that the evidence is what its proponent claims." *Blackwell*, 694 F.2d at 1330.

In considering the ATM photographic evidence at issue in *Rembert*, The Court of Appeals for the District of Columbia expanded the foundations that can support the authentication of photographic and video evidence.   In *Rembert*, the sole authenticating witness for the photos was a supervisor in the loss control division of the bank whose ATM machine was used in the crime. The witness testified that she was in charge of investigating questioned activities through the ATM machines.   She testified that the machine-maintained records at the branch showed an unusual pattern of use associated with the victim's ATM card on July 26, 1987.   The machine's records indicated that the card had been entered ten times on that occasion and was retained by the machine on the tenth attempt.   She further testified that video cameras are maintained at each of the three ATM machines at the branch location.   A video recorder taped the view from each camera in sequence, rotating to the next camera, taking a photograph every three seconds. This videotaping process imprints the date and time at which the pictures were made on the resultant photographs. She then identified a strip of pictures which was admitted into evidence over the defendant's objection.   The witness testified that she had viewed the original videotape and the resultant photographs and that the photographs were fair and accurate depictions of what was on the videotape. On cross examination, she testified that she had no personal knowledge of the events that transpired at the Seat Pleasant location on that date, and could not say from her own knowledge whether the photographs fairly and accurately depicted the scene and events at that time and place or not.   *Rembert*, 863 F.2d at 1026.   The Court upheld the admission of the photographs, holding:

> Consistent with our decision in *Blackwell* and the teachings of our sister circuits and the
> courts of the several states, we conclude that the contents of photographic evidence to be

admitted into evidence need not be merely illustrative, but can be admitted as evidence independent of the testimony of any witness as to the events depicted, upon a foundation sufficient to meet the requirements of Federal Rule of Evidence 901(a). In this case the circumstantial evidence provided by the victim witnesses as to the occurrences at the ATM machines, together with the testimony of [the bank supervisor] as to the loading of the cameras and the security of the film, coupled with the internal indicia of date, place, and event depicted in the evidence itself provide ample support for the District Court's exercise of its discretion. Just as the Ninth Circuit held that the contents alone provided sufficient circumstantial evidence for the authentication of the photographs in *Stearns*, so do the contents of the photos in the instant case supply any further need for authentication that the contact prints from the ATM machine may require on the present record.

Id. at 1028.

Courts, both federal and state, have modernized their standards for admissibility of photographic evidence. *Rembert*, 863 F.2d at 1026, *United States v. Taylor*, 530 F.2d 639 (5th Cir. 1976). Moreover, cases expanding the foundation appropriate to make photographic evidence admissible within the discretion of the trial court are legion.   *Rembert*, 863 F.2d at 1026.

### 1.    FRE 104 Offer of Proof in Support of Authentication

The Government offers significant evidence in support of authenticity pursuant to Federal Rule of Evidence 104.    Federal Rule of Evidence 104 provides, in part, that:

> (a) In General. The court must decide any preliminary question about whether a witness is qualified, a privilege exists, ***or evidence is admissible***. In so deciding, the court is not bound by evidence rules, except those on privilege.

Fed. R. Evid. (a) (emphasis added).    The Government proffers that CCTV video, Defendant's recorded video on the Northwest stairs, or testimony of a USCP Officer, or anyone else, who is familiar with the activities depicted in the YouTube video can authenticate the video. *See United States v. Demosthene*, 326 F. Supp. 2d 531 (S.D. N.Y. 2004) ("When ruling on the admissibility of evidence, a court is not bound by the federal rules of evidence and may rely upon hearsay and other reliable evidence. *See* Fed. R. Evid. 1101(d)(1); 104(a)" in holding that "the Court finds that

13

it properly relied upon the police reports . . . in ruling on the parties' motions in limine").

### 2.    Authentication with CCTV Video

The parties expect that they will agree to stipulate regarding the foundation and authenticity of relevant CCTV video in this case.[2] The Government can establish authenticity of the YouTube video by asking the Court to compare it with other, authenticated exhibits: in particular, CCTV footage. Fed. R. Evid. 901(3). CCTV footage will confirm that the YouTube video is what it purports to be: a recording of the same event, captured from a slightly different perspective, and depicting events and sounds that were not captured by CCTV.   Here, the Government would ask the Court to compare the CCTV videos, which produced footage of the breach of the police line on the Northwest stairs (Image 1) and Defendant running up those stairs (Image 6), with YouTube video, which shows rioters running up the same stairs that Defendant ran up only minutes after the initial breach of the stairs.

### 3.    Authentication with Defendant's Video

The video that Defendant recorded on the Northwest stairs can also serve as a source to authenticate the YouTube video. There, Defendant states at approximately 2:16 p.m., "[w]e just stormed the stairs of the Capitol, pushed the cops back . . ." Thus, providing circumstantial evidence of the events depicted in the YouTube video, that the rioters "pushed the cops back." *United States v. Taylor*, 688 F. App'x 638, 642 (11th Cir. 2017) (unpublished) (finding video of

---

2 If the parties do not stipulate to the authenticity of the CCTV videos, the Government will offer a witness familiar with the manner in which the video system is operated.   *United States v. Pinke*, 614 F. App'x 651, 653 (4th Cir. 2015) (unpublished) ("Our review of the record indicates that the Government presented sufficient evidence of authentication. As to the first video, a Government witness explained the manner in which the prison's closed circuit video system operates, the means by which he obtained the video, and that he downloaded it onto the DVD that was played for the jury.");

drug transaction sufficiently authenticated by circumstantial evidence despite the fact that no participant in the transaction testified).

   **4.** **Third Party Authentication – witnesses can authenticate the YouTube Video**

   Anyone who witnessed the events depicted in a photograph, or recorded in a video, can authenticate the evidence. Courts have ruled that "the evidentiary foundation 'may, but need not be, supplied by the person taking the photograph *or by a person who witnessed the event being recorded*.'" *Id.*, *see also United States v. Blackwell*, 694 F.2d 1325, 1330 (D.C. Cir. 1982) (police officer present during search and seizure of photograph properly authenticated photograph). The District Court in *Taylor* went on to emphasize that a stricter rule:

> would ignore a fundamental principle underlying authentication emphasized in *Goldsmith*. In making the initial authenticity determination, the court need only conclude that *a prima facie* showing has been made that the photograph is an accurate representation of what it purports to depict. The ultimate determination of the authenticity of the evidence is for the trier of fact, who must consider any rebuttal evidence and balance it against the authenticating evidence in order to arrive at a final determination on whether the photograph, in fact is authentic.

*Id*. Here, any witness present during the events recorded can testify that the events recorded or photographed appear to accurately show the events that took place. That threshold showing is sufficient to authenticate any video recording, with the finder of fact left to determine what weigh should be given to the evidence.

   Moreover, any of the individuals depicted in the videos can authenticate the video, even if they do not have an independent recollection of the encounter. *Penn v. Detweiler*, No. 1:18-CV-00912, 2020 U.S. Dist. LEXIS 38634, 2020 WL 1016203 (E.D. PA, Jan. 22, 2020). *See also Vazquez v. City of Allentown*, 689 F. App'x 695, 700 (3d Cir. 2017). Here, a USCP officer depicted in the video, or one who witnessed the events who was not recorded, can testify at trial that the

events depicted in the YouTube video accurately depict the events that took place during minutes 9:37 to 10:24 of the YouTube video. Thus, providing another means of authentication.

WHEREFORE, the Government respectfully requests that this Court deny Defendant's Motion in Limine Opposing Admission of YouTube Video and make a determination that the aforementioned segment of the video from 9:37 minutes to 10:24 minutes is authentic under the Federal Rules of Evidence and admissible at trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Anthony L. Franks*
ANTHONY L. FRANKS
Missouri Bar No. 50217MO
Assistant United States Attorney
Detailee – Federal Major Crimes
United States Attorney's Office
For the District of Columbia
Telephone No. (314) 539-3995
anthony.franks@usdoj.gov

GRACE ALBINSON
NY Bar No. 4952697
Trial Attorney, U.S. Department of Justice
Capitol Riot Detailee
150 M Street, N.E.
Washington, D.C. 20002
(202) 598-3276
Grace.E.Albinson@usdoj.gov