UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

            Plaintiff,            Crim. Action No. 21-377 (BAH)

v.

ANTHONY WILLIAMS,

            Defendant.

_____/

## MOTION TO CONTINUE TRIAL

Anthony Williams respectfully asks the Court to continue trial in this matter from June 27, 2022, until after September 2022, in light of new information from the U.S. Attorney Office for the District of Columbia recognizing the overlap between the work of the prosecutions in the January 6 cases and the work of the House of Representatives' Select Committee to Investigate January 6. Although this motion is filed beyond the motion cutoff, this new information was just publicly docketed June 16, 2022 (*see* Ex. 1, Consent to Continue Trial & Graves Letter, at 1 n.1), and the defense has worked diligently to research the matter and seek concurrence of the government. The government opposes continuance and the filing of this motion as untimely.

### Background

Trial is scheduled to begin in a week, on June 27, 2022, regarding Mr. Williams's actions on January 6, 2021, and whether, among other things, he intended to obstruct a proceeding of Congress when he entered the Capitol with others that day. The prosecution intends to call seven witnesses. Mr. Williams does not yet know the identity of the government's witnesses.

1

Mr. Williams previously sought a continuance as part of his motion to transfer venue. (ECF No. 60, Venue Reply, at 5-7.) At that time, he argued that for continuance as an alternative to transferring venue, in accordance with *Delaney v. United States*, 199 F.2d 107 (1st Cir. 1952). (*Id.* at 5-6.) This Court denied the transfer motion on June 10, 2022, the day after the first Select Committee hearings. Mr. Williams is not asking for a venue transfer as part of this motion.

Since the denial of the venue-transfer motion, additional information about the Select Committee's work has become publicly known. First, reports have confirmed that viewership for the first hearing, on June 9, 2022, numbered approximately 20 million people. (*See* Ex. 1, Consent to Continue Trial & Graves Letter, at 1 n.1.) Additional hearing were held June 13, 2022, and June 16, 2022. The hearings so far have disclosed new evidence related to January 6 and in a manner likely to affect the public. As summarized by leading legal security analysts, "The presentations in the hearings have been powerful, the recorded interviews compelling, and the rhetoric damning and often electrifying." Benjamin Wittes, *et al.*, *Evaluating the Jan. 6 Committee's Evidence*, LAWFARE, June 15, 2022, https://perma.cc/8VTX-B8T4.

Future hearings are scheduled for June 21, 2022, and June 23, 2022. *See* January 6th Committee Website, https://january6th.house.gov/legislation/hearings. The last currently scheduled hearing will be just four days before the trial in this case. According to Representative Liz Cheney, the hearings later this month will focus on how "President Trump summoned a violent mob and directed them illegally to march on the United States Capitol." Wittes, *supra*. Thus, the hearings right before trial may have particular bearing on this case.

Additional future hearings are anticipated, including potentially in the middle of the trial in this case. In addition, the Committee anticipates issuing "a voluminous report with recommendations in September." Deirdre Walsh & Claudia Grisales, *5 key questions the Jan. 6*

*committee will tackle in its hearings*, NPR, June 9, 2022, https://perma.cc/ACQ2-B6JF. "There could be a final hearing in September — right before the November midterm elections." Amber Phillips, *How to watch the Jan. 6 committee hearings and what to watch for*, WASHINGTON POST, updated June 17, 2022, https://perma.cc/94V6-7PV2.

Perhaps most importantly, a new filing by the government from the end of last week reveals that the Department of Justice does not have access to substantial materials obtained by congressional investigators. The Select Committee has interviewed "more than a thousand witnesses" and "obtained more than 100,000 documents." Claudia Grisales, *The Jan. 6 panel will reveal their findings with new videos and photos on Thursday*, NPR, June 8, 2022, https://perma.cc/UVZ3-4KMJ. And according to a June 15, 2022 letter from U.S. Attorney Matthew Graves to Timothy Heaphy (Chief Investigative Counsel for the Select Committee), the Department of Justice does not have transcripts from the witness interviews conducted by the Committee. (Ex. 1, Consent to Continue Trial & Graves Letter.) Nor does the Department have the ability to compel Congress to produce these transcripts. (*Id.* at 1.)

**Analysis**

"There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Instead, the answer "must be found in the circumstances present in every case." *Id.* Some factors to consider are the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; and whether the defendant contributed to the circumstance which gives rise to the request for a continuance. *United States v. Burton*, 584 F.2d 485, 490–91 (D.C. Cir. 1978).

In *Delaney v. United States*, 199 F.2d 107, 109 (1st Cir. 1952), the First Circuit found that a trial court abused its discretion in not granting a continuance given congressional proceedings occurring at the same time regarding the criminal conduct at issue. There, as here, the congressional hearings received "widespread publicity." *Id.* at 111. The trial court refused to grant any delay beyond approximately three months after the hearings. *Id.* In finding error, the First Circuit concluded: "If the United States, through its legislative department, acting conscientiously pursuant to its conception of the public interest, chooses to hold a public hearing inevitably resulting in such damaging publicity prejudicial to a person awaiting trial on a pending indictment, then the United States must accept the consequence that the judicial department, charged with the duty of assuring the defendant a fair trial before an impartial jury, may find it necessary to postpone the trial until by lapse of time the danger of the prejudice may reasonably be thought to have been substantially removed." *Id.* at 114.

Here, Select Committee hearings are scheduled to occur four days before trial and may take place during the trial. The timing of the hearings thus prejudices Mr. Williams's ability to obtain a fair trial and raises a due process concern for two reasons.

First, the hearings affect Mr. Williams's ability to secure an unbiased jury, in any jurisdiction, given the high viewership of the hearings and their proximity in time to the trial. On June 16, 2022, the government consented to continuing the trial in *United States v. Nordean*, Case No. 21-175, which was scheduled for trial in August 2022, until December 2022. In consenting to the adjournment, the government agreed, noting the high viewership for the hearings, "that the timing of the hearings may prejudice the defendants." (Ex. 1, Consent to Continue Trial & Graves Letter, at 1 n.1.) The shorter time between the hearings and trial in this case makes prejudice even more likely.

4

Second, it is unfair to proceed to trial when neither the prosecution nor the defense knows what newly disclosed evidence may be produced through the Select Committee hearings. As the government explained in *Nordean*, the government concurs that transcripts from Congress' witness interviews are important to review before trial, and the "timing of the anticipated release will prejudice the ability of all parties to prepare for trial because the parties are currently unable to account for the content of those transcripts with respect to their respective cases." (Ex. 1, Consent to Continue Trial & Graves Letter, at 1.)

Matthew Graves's letter from June 15, 2022, supports this assessment. Speaking in broad terms, Mr. Graves states that, in light of the Select Committee hearings, "[i]t is now readily apparent that the interviews the Select Committee conducted are not just potentially relevant to our overall criminal investigation, but are likely relevant to specific prosecutions that have already commenced." (*Id.* at 4.) Further, he explained that "it is critical that the Department be able to evaluate the credibility of witnesses who have provided statements to multiple government entities in assessing the strength of any potential criminal prosecutions and to ensure that all relevant evidence is considered during the criminal investigations." (*Id.*) As it stands, the Department "cannot be sure that all relevant evidence has been considered without access to the transcripts that are uniquely within the Select Committee's possession." (*Id.*)

At this stage, neither party knows the contents of all of the Select Committee's interviews. The contents of yet-to-be-disclosed interviews may be relevant to the credibility of the government's witnesses. It is unknown if these witnesses testified themselves before the Select Committee or whether their actions were discussed in other witness testimony. The interviews may also be relevant to other evidence in the case. For example, there are videos on the government's

exhibit list obtained through the personal devices of others who entered the Capitol on January 6, and it is unknown if witness testimony before the Select Committee implicates those individuals.

Any prejudice to the government is outweighed by the prejudice to Mr. Williams. The requested continuance is 90 to 120 days, until after September 2022, when it appears the materials from the Select Committee will be shared. As it stands, there are no jurors impaneled, and government witnesses have not traveled for trial. The defense does not yet know the identity of the government witnesses, but they are likely all local or government employees, who will not face serious inconvenience from a delay. Mr. Williams will remain under supervision and pretrial restrictions. He remains in compliance with his conditions of supervision.

## Conclusion

In light of the timing of the Select Committee hearings, and the parties' lack of access to materials obtained through the Committee's investigation, Mr. Williams respectfully asks the Court to continue his trial.

Respectfully submitted,

/s/ Benton C. Martin
/s/ James R. Gerometta
Federal Community Defender
Eastern District of Michigan
613 Abbott St., Suite 500
Detroit, Michigan 48226
Telephone:   (313) 967-5832
Email: Benton_Martin@fd.org

Date: June 20, 2022