UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:21-cr-377 BAH |
| v. : | |
| : | |
| ANTHONY ROBERT WILLIAMS, : | |
| : | |
| Defendant. : | |

## THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE TRIAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this response to defendant Anthony Robert Williams' Motion to Continue Trial and states as follows:

The defendant's Motion to Continue is untimely and is based entirely on the ongoing work of the House Select Committee to Investigate the January 6th Attack on the United States Capitol, which was known to the parties and discussed fully at the final pretrial conference on June 10, 2022. As the Court indicated at the final pretrial conference, a thorough *voir dire* process will ensure that any jurors who have been exposed to coverage of the Select Committee's work are vetted carefully. Indeed, the Court has agreed to ask an additional question regarding the Select Committee's hearings in order to ensure that the jurors can be fair and impartial and will follow the Court's instructions. No further action in this case is needed, nor is a continuance to an unspecified date in the future for all January 6 trials warranted.

Recognizing that his motion is untimely, defendant attempts to identify "new information" that would justify his late-filed request. The purported new information comes from a letter by the United States Attorney's Office and a pleading that stem from the overlap between the work of the Select Committee and a specific, large-scale prosecution of a complex

conspiracy case, *United States v. Ethan Nordean, et al.* (21-cr-175), which currently scheduled for trial on August 8, 2022. The Select Committee has focused on the actions of the defendants in that specific case, many of whom it identified by name. Moreover, the Select Committee has indicated that it will release transcripts of the interviews it has conducted in early September 2022, which will be after jeopardy has attached in that case, and midway through that trial. Given the prominence of those defendants in the hearings of the Select Committee and the timing of the proposed release of additional information by the Select Committee, the parties in that case have expressed concern that the Select Committee's release of transcripts could have a significant impact on the parties' ability to prepare for a multi-week conspiracy trial.

The issues raised in that complex case with those particular defendants have no bearing on this case against an individual defendant, who is charged in this standalone case and who has garnered no mention in the Select Committee's hearings. Defendant has not identified any prejudice that will stem from the fact that the Select Committee hearings are continuing and that they may release some portion of its investigative materials in the near future. The motion to continue should be denied.

    A.  The Final Pretrial Conference

At the final pretrial conference on June 10, 2022, the parties and the Court spent significant time discussing the fact that the Select Committee hearings were going to be televised beginning this month, on the eve of trial. In denying the defendant's motion for a change of venue, the Court noted that the January 6 riot is a matter of national importance and so the parties should expect that some measure of the population in any venue across the country will have observed or read about the hearings. The Court denied a change of venue, but indicated

that it would consider additional *voir dire* on the topic. On June 14, 2022, the parties jointly submitted an additional question for *voir dire* in order to address the hearings. The parties' proposed question states as follows:

> If you have watched any coverage of the Congressional hearings, would you have any difficulty putting aside any opinions you may have formed about the people involved in the events of January 6, 2021, and decide this case based solely on the evidence that will be presented in court, follow the law, and decide the case in a fair and impartial manner?

Moreover, the Court indicated at the final pretrial that it anticipated that the focus of the Select Committee hearings would not be on individual defendants like Mr. Williams, but, instead, on those in positions of authority: "This might be the best time for defendants charged with offensive conduct on January 6 inside the Capitol building to be having their trials, when the House select committee is laying out a scenario — I'm surmising from what they're anticipating — that the persons accountable are the former president and his close associates, and that they had been planning this for weeks prior to January 2021." The content of the hearings has, indeed, borne that out. The hearings have focused heavily on the acts of those around the former President and Vice President, and, to some extent, on the actions of organized groups, such as the Proud Boys. We are not aware of any coverage that would have a connection to this defendant or his conduct.

There is nothing in the defendant's motion to continue that was not anticipated by the parties and the Court at the final pretrial conference. As the Court concluded at the final pretrial conference, the process of *voir dire* will address any potential impact from the Select Committee's hearings.

B. The *Nordean* case is Not Analogous

In support of his motion, the defendant cites to a letter submitted by the United States Attorney to the Select Committee. That letter, however, stems from circumstances that have no bearing on this case. The letter was driven by the circumstances surrounding the pending prosecution of the leadership of the Proud Boys for, among other things, seditious conspiracy. *United States v. Nordean, et al*, 21-cr-175 (TJK). The Proud Boys organization and their prosecution has received substantial attention at the hearings, including quoting from pleadings in the pending case and description of the conduct of those particular defendants (by name in some instances). Unlike the unique situation in *Nordean*, the government has no reason to believe that the Select Committee will release transcripts or other materials in the coming weeks that will have an impact on this case.

The trial in this case will focus on the conduct of defendant Williams, who traveled alone from Michigan to the Capitol on January 6. The government has no indication that he is affiliated with any larger organizations that played a role in the Capitol Riot.

At trial, the government anticipates calling just seven witnesses who generally will testify on the following points:

1. United States Capitol Police Captain Matthew Tighe, who will describe the layout of the Capitol, general events of the riot, certain responses to the threat of rioters, the restricted perimeter, and the USCP's CCTV.

2. United States Capitol Police Captain Ronald Ortega, who will describe the general events of the riot, including, but not limited to, actions on the West Front of the Capitol, Northwest Stairs and Upper West Terrace.

3. United States Capitol Police Officer Juan Lopez, who will describe events of the riots inside and outside of the Capitol, including, but not limited to, activity on the West Front of the Capitol, and in the Crypt, and Rotunda.

4. Metropolitan Police Department (MPD) Officer Syed Hussain who will generally describe the MPD responding to the Capitol and the events of the riot in the Rotunda.

5. Daniel Schwager, General Counsel to the Secretary of the Senate, who will generally describe the certification process set for January 6, 2021, details on this official proceeding, reasons for its delay on January 6, 2021, and actions taken because of the delay.

6. Federal Bureau of Investigation Special Agent Matthew Hughes, who will generally testify on the FBI's investigation of the defendant and his actions before, during, and after the riot.

7. United States Secret Service Special Agent and Assistant to the Special Agent in Charge, Paul Wade, who will establish that the Vice President -- a person protected by the Secret Service -- was present at the Capitol on January 6, 2021, and, thus, that the Capitol building and grounds were a restricted area for purposes of 18 U.S.C. § 1752.

The government has canvassed its expected witnesses and has determined that only one, Secret Service Special Agent Wade, has provided a statement to the Select Committee.[1] Special Agent Wade had no contact with the defendant, and his testimony will not be controversial.

---

[1] Special Agent Wade was interviewed by Select Committee personnel by video conference on January 7, 2022. The interview was unsworn, and Counsel for U.S. Secret Service do not believe that it was recorded.

Special Agent Wade has, in fact, provided this testimony in four Capitol Riot trials to date with minimal cross-examination and no impeachment. Indeed, in other January 6 trials, these same facts have been established through stipulations and the use of prior transcripts.

The fact that Special Agent Wade was interviewed by the Select Committee will have no impact on this case, and there will be no prejudice to the defendant even if Wade's interview were to be released publicly during trial. His uncontroversial testimony regarding the Secret Service protection of the Vice President does not relate directly to defendant Williams, and the defendant will, in any event, have ample opportunity to cross examine Wade based on his prior trial testimony on the same topic.

C. *Voir dire* will adequately address the hearings

As the Court concluded at the final pretrial conference, *voir dire* will address any potential impact from the Select Committee's hearings. The Supreme Court has observed that *voir dire* is "well suited to th[e] task" of probing a crime's "widespread community impact." *Skilling v. United States*, 561 U.S. 358, 384 (2010). Similarly, the D.C. Circuit has said that "*voir dire* has long been recognized as an effective method of routing out [publicity-based] bias, especially when conducted in a careful and thoroughgoing manner." *In re Nat'l Broadcasting Co.*, 653 F.2d 609, 617 (D.C. Cir. 1981); *see Jones v. Gasch*, 404 F.2d 1231, 1238 (D.C. Cir. 1967) (quotation omitted) (stating that "the proper occasion" for determining whether an impartial jury can be selected "is upon the *voir dire* examination"). As that court has observed, "if an impartial jury actually cannot be selected, that fact should become evident at the *voir dire*." *United States v. Haldeman*, 559 F.2d 31, 63 (D.C. Cir. 1976).

Williams has provided no reason why *voir dire* would be inadequate to protect his right to

an impartial jury. He points out that approximately 20 million people watched the televised coverage of the first hearing on June 9, 2022. ECF 102 at 2. But this exposure was not limited to D.C. Instead, the hearings were carried on national networks across the country. In similar circumstances, the D.C. Circuit affirmed the denial of a change of venue where the defendants—who were high-ranking members of the Nixon administration—complained that they were prejudiced by news coverage of the Watergate-related hearings. *Haldeman*, 559 F.2d at 62-64 & nn.35, 43. The court of appeals observed that "a change of venue would have been of only doubtful value" where the "network news programs and legislative hearings" related to Watergate were "national in their reach." *Id.* at n.43.

Moreover, the 20 million viewers of the June 9, 2022, hearing represent only about 6% of the total U.S. population. Williams has not pointed to any evidence that D.C. residents were more likely to have watched that hearing than citizens in other parts of the country. But even if D.C. residents tuned in at a higher rate, it is still likely that a majority of D.C. residents did not watch the hearings. And this Court can select a jury from those residents who either did not watch the hearings or who, despite having watched the hearing, give adequate assurances of their impartiality. *See Haldeman*, 559 F.3d at 62 n.35 (rejecting claim of prejudice even though "several jurors" had "seen portions of the televised Senate hearings" related to Watergate).

Conclusion

The Court has already determined that careful *voir dire* is the best means to address the fact that the Select Committee hearings are ongoing as we approach trial. There is no new information that alters that conclusion, and defendant offers no reason to believe that the release of Select Committee interviews or other materials in the coming weeks will have a bearing on the charges or evidence in this specific case. The motion to continue should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     /s/ Anthony L. Franks
   ANTHONY L. FRANKS
Missouri Bar No. 50217MO
Assistant United States Attorney
Detailee – Federal Major Crimes
United States Attorney's Office
For the District of Columbia
Telephone No. (314) 539-3995
anthony.franks@usdoj.gov


GRACE ALBINSON
NY Bar No. 4952697
Trial Attorney, U.S. Department of Justice
Capitol Riot Detailee
150 M Street, N.E.
Washington, D.C. 20002
(202) 598-3276
Grace.E.Albinson@usdoj.gov

CERTIFICATE OF SERVICE

A copy of this motion, and its proposed order will be served on counsel for defendant Williams by electronic mail on June 22, 2022.

   /s/ Anthony Franks
Anthony Franks, AUSA


   /s/ Grace Albinson
Grace Albinson