UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY ROBERT WILLIAMS,<br><br>Defendant. | Criminal Case No. 21-377 (BAH)<br>Chief Judge Beryl A. Howell |

## ORDER REGARDING TRIAL PROCEDURES

The Standing Order for Criminal Cases, **ECF No. 15**, already entered in this matter is supplemented as follows:

1. **Trial Schedule**. The trial will begin with jury selection on **Monday, June 27, 2022, at 9:00 a.m. in Courtroom 20, the Ceremonial Courtroom.** Upon completion of jury selection, the trial will take place in Courtroom 22A. Unless the parties are otherwise notified, the Court will convene the trial from **9:15 a.m. to 12:30 p.m.** and **1:30 p.m. to 5:00 p.m.**, **Monday through Friday**, with a brief mid-morning and mid-afternoon recess. Counsel should be prepared to deliver their opening statements promptly after the jury has been selected, sworn-in and preliminary instructions have been delivered by the Court.
    a. Opening statements shall not exceed 30 minutes per party. Any exhibits, charts, or summaries to be used in opening statements must be cleared with counsel for the other side prior to the opening statements, and if any party objects, such objections must be submitted to the Court for resolution by **noon on June 24, 2022.**
    b. Immediately after opening statements, the government must be prepared to call its first witness.
    c. Unless otherwise instructed by the Court, counsel and defendant should be present in the courtroom each morning at least fifteen minutes before trial begins to address any preliminary matters. Trial before the jury will convene promptly at the designated time on each trial day to avoid keeping the jury waiting.

2. **General Courtroom Rules**. In addition to exercising civility, counsel shall, unless leave is otherwise granted:
    a. examine witnesses from the lectern and refer to all individual parties and witnesses, over the age of 18, as "Mr." or "Ms." rather than by a first name or nickname;
    b. request permission before approaching a testifying witness;
    c. stand when raising objections;
    d. remain seated when the jury is entering or leaving the courtroom;
    e. direct all statements for the record to the Court rather than to the opposing party.

3. **Jury Selection Process**.  An outline of the jury selection process to be used in this criminal matter is set forth in **Attachment A** to this Order.

4. **Technical Equipment**. Counsel needing technical assistance with courtroom equipment (*e.g.,* overhead projectors, video display monitors) must contact the Courtroom Technology Administrator of the Clerk's office at (202) 354-3019.

5. **Statement of the Case**.  The Court intends to describe the case to the venire panel as follows:

   This is a criminal case.  The United States has charged defendant Anthony Robert Williams with violating five separate federal criminal laws based on his conduct while on the grounds of and inside the United States Capitol Building on January 6, 2021.  Specifically, defendant Anthony Robert Williams is charged with unlawfully obstructing Congress's Joint Session to certify the Electoral College votes; unlawfully entering and remaining in the U.S. Capital; unlawfully engaging in disorderly and disruptive conduct; and unlawfully parading, demonstrating, and picketing.  Mr. Williams denies each charge.

6. ***Voir Dire* Questions**.  The *voir dire* questions that the Court intends to pose to the venire panel collectively are listed in **Attachment B** to this order.

7. **Motions or Objections During Trial**.
   a. **No evidentiary objections shall be argued in the presence of the jury.**  Counsel must state clearly and succinctly the legal basis for any objection in a word or short phrase.  To protect the record for appellate review, counsel may explain or amplify an objection on the record outside the hearing of the jury or after the jury has been excused.  If counsel plans to engage in a line of inquiry that requires judicial pre-approval, counsel may request a bench conference.

   b. **Bench Conferences should be requested only when necessary** because counsel intends to refer to issues requiring pre-clearance (*e.g.*, anticipated questions or testimony may refer to missing witness or potentially inflammatory subject matter).  Counsel should not expect requests for a bench conference to be routinely granted and should, instead, consider whether the issue counsel wishes to address at the bench can wait until the jury is excused for a recess.

8. **Witness Examination**.
   a. A party calling a witness must arrange for the witness' presence until cross-examination is completed.  Failure to have a witness present for cross-examination is grounds for striking the witness' testimony.  Except in extraordinary circumstances, the Court will not recess the trial due to the unavailability of a witness.

   b. After a non-defendant witness has been tendered for cross-examination and until the witness has been tendered back for redirect, counsel calling that witness (including law enforcement officers or investigators) to testify must have no further discussions with that witness concerning any aspect of the testimony already given or anticipated.  For a

defendant-witness, the Court refers the parties to the guidelines set forth in *United States v. McLaughlin*, 164 F.3d 1, 4–7 (D.C. Cir. 1998), *cert. denied*, 526 U.S. 1079 (1999).

9. **Jury Instructions**.  If events during trial necessitate an immediate jury instruction, counsel requesting the instruction must provide the Court with the text of the proposed instruction; otherwise, the request may be considered waived.  If a party would like an instruction included in the Court's final instructions to the jury, that party bears the responsibility of providing the text requested prior to the charging conference for discussion at the charging conference.

10. **Juror Confidentiality**.  The names and personal information of prospective and selected jurors in any trial of this matter shall be kept confidential and not disclosed outside of open court, except upon order of the Court.  *See* D.D.C. JURY SELECTION PLAN ¶ 18.1 (updated May 17, 2022), available at https://www.dcd.uscourts.gov/jury-selections.  Counsel and parties are cautioned that violation of this directive may result in contempt proceedings.

11. **COVID-19 Protocols.**  To ensure the health and safety of all trial participants, courthouse staff and visitors during the COVID-19 pandemic, special procedures will be employed during the course of the trial, including conducting jury selection in the Ceremonial Courtroom, Courtroom 20, *see supra* ¶ 1.  As discussed during the pretrial conference on June 10, 2022, all persons in the courtroom are required to maintain social distancing of approximately three feet from prospective and selected jurors and to wear a KN95 mask, unless otherwise expressly permitted by the Court or when testifying before, or speaking to, the jury or the Court.  Any testifying witness, who is not fully vaccinated and boosted to the extent eligible, must show a negative rapid test to counsel calling that witness on the day the testimony is presented to the jury.

**Date:** June 23, 2022

                                              BERYL A. HOWELL
                                              Chief Judge

## ATTACHMENT A TO TRIAL ORDER
## Jury Selection Process To Ensure Necessary Social Distancing During COVID-19 Pandemic

1. <u>Number of Jurors Seated</u>.  As required by the Federal Rules of Criminal Procedure, a unanimous verdict must be returned by a jury of **12** members in criminal trials, absent special circumstances. FED. R. CRIM. P. 23(b) and 31(a).  To provide prudently for the sickness or disability of any juror, two alternate jurors will also be selected.  FED. R. CRIM. P. 24(c)(1).

2. <u>Venire Panel</u>.  The number of panelists is computed by totaling the following: the number of jurors to be selected, the number of alternates to be selected, and the number of peremptory challenges. Thus, in this single defendant criminal case, in which the defendant has 10 and the government has 6 peremptory challenges, *see* FED. R. CRIM. P. 24(b)(2), plus each side has 1 challenge with respect to alternates, *see* FED. R. CRIM. P. 24(c)(4)(A), individual *voir dire* will be conducted on a sufficient number of prospective jurors to qualify a venire panel, after excusing panelists for cause, of 32 panelists.

3. <u>Location</u>.  During the jury selection process, approximately 60 prospective jurors will be seated in the Ceremonial Courtroom in marked seats to ensure appropriate social distancing at all times.

4. <u>Venire List</u>.  Counsel will be provided with the written list of the summoned prospective jurors ("venire list") that is randomly generated.

5. <u>Preliminary Matters and Administration of Oath</u>.  After the prospective jurors are seated, Chief Judge Howell will give a brief introduction, explaining the importance of jury service and the selection process, and the oath will be administered to all prospective jurors.

6. <u>General *Voir Dire* Questions Asked Simultaneously to All Prospective Jurors</u>.  Chief Judge Howell will decide what *voir dire* questions will be asked after consideration of the proposed *voir dire* questions submitted by the parties as part of the Joint Pretrial Statement and any supplemental filings.  FED. R. CRIM. P. 24(a).  Chief Judge Howell will ask general questions simultaneously to all prospective jurors in the Ceremonial Courtroom.  The jurors will be instructed to mark on the paper provided by the courtroom deputy clerk the number of any question to which the juror has an affirmative answer to facilitate any follow-up questions.

7. <u>Individual Responses to Questioning</u>.  Following the general questions, Chief Judge Howell will conduct individual follow-up questioning of prospective jurors in the Ceremonial Courtroom in the order listed on the venire list and outside the presence of the other prospective jurors.  Each prospective juror will be asked follow-up questions about any affirmative response indicated on the paper.  Counsel will have the opportunity to request that Chief Judge Howell ask additional pertinent follow-up questions of individual jurors at this time.  FED. R. CRIM. P. 24(a)(2).  The venire panel will be instructed not to discuss the case or the *voir dire* questions.

8. <u>Strikes for Cause</u>.  Strikes for cause should be made immediately after the individual questioning of the prospective juror and will be ruled on promptly and any struck juror will be excused from the courtroom.  When 32 prospective jurors have been qualified, following individual *voir dire* and resolution of strikes for cause, the selection process will proceed immediately to the exercise of preemptory challenges.

9. <u>Peremptory Challenges For Regular Jurors</u>.  The parties are permitted to challenge only qualified prospective jurors in the venire.  For both regular and alternate jurors, the courtroom deputy clerk will provide the parties with a document upon which they should record their respective peremptory strikes in the order outlined below.

    Peremptory challenges are exercised in six rounds: in the **first four rounds**, the government exercises one challenge and the defendant exercises two challenges; in the **next two rounds**, each side exercises one challenge, for a total of 6 and 10 challenges for the government and defendant, respectively.  In each round, the government will exercise its challenge first.  A pass by any side counts as a strike.  If the government fails to exercise a challenge on a round, and the defendant also fails to exercise a challenge on that same round, the peremptory challenge process for the twelve-person jury will be deemed completed.  The qualified prospective jurors, who have not been stricken, in the order their names appear on the venire list will be the regular jury.

10. <u>Peremptory Challenges For Alternate Jurors</u>.  The government may exercise one peremptory challenge as to qualified prospective alternate jurors, followed by the defendant, who may do the same.  *See* FED. R. CRIM. P. 24(c)(4).

11. <u>Swearing-In Jury</u>.  Following the exercise of any peremptory challenges as to the prospective alternate jurors, the courtroom deputy clerk will ask the remaining fourteen qualified prospective jurors to be reseated in the jury box in the order their names appear on the venire list, with the last two jurors serving as the alternates.  The jury will be sworn-in and then proceedings will be adjourned briefly to resume in Courtroom 22A.

12. <u>*Batson* Challenges</u>.  Prospective jurors who were stricken on a peremptory challenge will not be excused until the entire selection process has been completed, including the resolution of any challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986).  Counsel are forewarned that should a *Batson* challenge be found to be meritorious, the remedy may be to impanel the improperly stricken juror on the jury and preclude the party who improperly exercised the strike from excluding that juror.  Other remedies to address *Batson* violations are also available, including the imposition of monetary sanctions.  Counsel should therefore be mindful of the obligation not to exercise peremptory challenges that seek to exclude jurors based on race or gender.

**ATTACHMENT B TO TRIAL ORDER**
*Voir Dire* **Questions**

1. Do you feel so uncomfortable being in a room with other jurors and trial participants, due to the COVID-19 pandemic, that it would be difficult for you to pay attention or otherwise to serve as a juror in this case?

2. Are you currently caring for a relative or close friend, who has been infected by, or exposed to persons infected with, COVID-19, such that it would be difficult for you to pay attention or otherwise to serve as a juror in this case?

3. The United States is represented in this case by attorneys **ANTHONY FRANKS** and **GRACE ALBINSON**, and they are being assisted by paralegal **NGOZICHUKWUKA OBI**, all of whom work at the U.S. Attorney's Office here in Washington, D.C.  PLEASE STAND.  Do you know or have you had any contact with these individuals?

4. The defendant at trial is **ANTHONY ROBERT WILLIAMS**.  PLEASE STAND.  Do you know or have you had any contact with **ANTHONY ROBERT WILLIAMS**?

5. **Mr. WILLIAMS** is represented in this case by attorneys **BENTON MARTIN** and **JAMES GEROMETTA**.  PLEASE STAND.  Do you know or have you had any contact with **BENTON MARTIN** or **JAMES GEROMETTA**?

6. During the course of the trial, you may hear testimony from or about a number of people.  The attorneys will now identify for you the names of people who may testify or about whom you may hear testimony.  Listen carefully and, if you recognize or know any of the people named, please mark your paper beside the **number 6**.  The Government's counsel may go first, and then defense counsel may list any additional names.

7. Please look around you.  Do you know or recognize any other member of the prospective jury panel, any member of the courtroom staff or me?

8. During the course of this trial, you will hear about a certain location in Washington, D.C., the United States Capitol.  Please put a mark next to **number 8** if you, any member of your family or close friend lives or works near the immediate area of the United States Capitol.

9. Were you, any member of your family or close friend present at the U.S. Capitol on January 6, 2021?

10. The lawyers have predicted that the presentation of evidence in this trial should last about one week, but it could run longer.  The jury will sit Monday through Friday, generally from 9:15 a.m. to 5 p.m., although the starting and ending times may vary.  The length of jury deliberations following the presentation of evidence at trial will be determined by the jury itself.  Do you have an urgent or extremely important matter to attend to this week such that you could be faced with a hardship if selected to serve on the jury in this case?

11. Do you have any vision, language, or hearing problems, or any other physical or medical problems, that might interfere with your ability to hear or understand what the witnesses say in this case, to view exhibits and photographs, or to give your full attention to this case?

12. Do you have any moral, religious, or ethical beliefs that prevent you from sitting in judgment of another person?

13. If you ever served before as a juror at a civil or criminal trial, or on a grand jury, was there anything about your service that might affect your ability to serve fairly and impartially as a juror at this trial?

14. Have you, any member of your family or close friend ever studied law, been employed by a lawyer or a law firm, worked in a courthouse, been a paralegal or legal secretary, or performed legal investigative work?

15. Have you, any member of your family or close friend ever been employed by any local, state, or federal law enforcement agency or a private security company?  Law enforcement agencies include, for example, the D.C. Metropolitan Police Department, the Federal Bureau of Investigation, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and the United States Capitol Police.

16. Do you, any member of your family or close friend belong to a group or organization that is active in law enforcement or crime victim prevention matters?  Some examples of such organizations include: **Fraternal Order of Police, Crime Watch, Neighborhood Watch, Crime Stoppers, Orange Hats, or other organizations, including any groups online, that monitor or discuss neighborhood crime issues**.

17. Have you, any member of your family or any close friend had any experiences with any law enforcement agency or the government that might cause you to favor or disfavor the government or law enforcement?

18. Have you ever filed a complaint against a police officer or anyone in law enforcement?

19. Have you, any member of your family or close friend ever been the subject of a criminal investigation, accused of criminal conduct, or arrested or prosecuted for a crime?

20. Have you, any member of your family or close friend ever been a victim of a crime, a witness to a crime, or testified in court or before a grand jury as a witness to a crime?

21. In this case, law enforcement officers will be witnesses.  Would you tend to believe or not believe the testimony of a law enforcement officer simply because he or she is a law enforcement officer?  In other words, would you tend to give more or lesser weight to the testimony of a law enforcement officer than to the testimony of other witnesses?

22. Do you have any opinions about prosecutors or defense attorneys that might affect your ability to serve fairly and impartially at this trial?

23. The prosecution has the burden of proof.  This means that the jury cannot return a guilty verdict against a defendant unless the prosecution has proven beyond a reasonable doubt that the defendant is guilty of the crime charged.  Would you have any difficulty accepting and applying this legal instruction?

24. Every defendant in a criminal trial is presumed innocent and, therefore, has no obligation to testify or present any evidence in the case. Would you have any difficulty accepting and applying this legal instruction?

25. To reach a verdict on a particular charge, every juror must agree on the verdict. That is, any verdict must be unanimous. In deliberations you must consider the opinions and points of your fellow jurors, but you must also follow your own conscience and be personally satisfied with any verdict. Would you have difficulty expressing your own opinions and thoughts about this case to your fellow jurors?

26. Is there anything about the nature of the case or about the parties involved that would make it difficult for you to render a verdict based solely upon the evidence presented and law as I instruct you?

27. Based upon the information I have given you about this case, have you received or seen any information from any source that you recall being specifically about the defendant in this case, **ANTHONY ROBERT WILLIAMS**?

28. Do you have such strong feelings or opinions about the events that took place at the U.S. Capitol on January 6, 2021 and about the individuals present at the U.S. Capitol during those events that it would be difficult for you to serve as a fair and impartial juror in this case?

29. A House Select Committee has been holding hearings concerning events at the U.S. Capitol on January 6, 2021. If you have watched or read coverage of those hearings, will you have any difficulty putting aside any opinions you may have formed about the people involved in those events, following the law as I explain it to you, and deciding the case in a fair and impartial manner based solely on the evidence presented in court?

30. No matter what you have heard or seen about events at the U.S. Capitol on January 6, 2021 from any source, and no matter what opinions you may have formed, will you have any difficulty putting that aside, following the law as I explain it to you, and deciding the case in a fair and impartial manner based solely on the evidence presented in court?

31. As you sit here, do you have an opinion about defendant **ANTHONY ROBERT WILLIAMS's** guilt or innocence in this case?

32. Do you believe that your political views, or those of your spouse, partner, or significant other, will affect your ability to serve as a fair and impartial juror in this case?

33. Do you know of any reason, or has anything occurred to you during this questioning, that might in any way prevent you from following my instructions on the law and being completely fair and impartial as a juror in this case?