UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 21-cr-377 (BAH) |
| | : | |
| ANTHONY WILLIAMS, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## RENEWED MOTION FOR BOND PENDING APPEAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant Anthony Williams's Renewed Motion for Bond Pending Appeal (ECF 140) in light of the Supreme Court's recent decision to grant *certiorari* in *United States v. Fischer*, No. 23-5572, 2023 WL 860578 (Dec. 13, 2023). Regardless of the outcome in *Fischer*, Williams cannot establish by clear and convincing evidence that he does not pose a danger to the community or present a flight risk. In addition, although the government acknowledges this Court's decisions to the contrary,[1] the government respectfully submits that Williams nevertheless cannot show that there is any likelihood that the outcome in *Fischer* will result in a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process, because the government's sentencing recommendation likely would be different in the absence of a conviction for obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) and could include a request for consecutive sentences to account for both the severity of Williams's conduct on January 6 and for

---

[1]   *See United States v. Bledsoe*, No. 21-cr-204 (BAH) (ECF 260); *United States v. Bender*, No. 21-cr-508 (BAH) (ECF 161).

the aspects of his conduct and history that the Court originally found warranted a sixty (60) month sentence. Accordingly, Williams's motion should be denied.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

The grand jury returned an indictment on May 26, 2021, charging the defendant with felony violation of 18 U.S.C. § 1512(c)(2), as well as four misdemeanor offenses (ECF 13). On June 30, 2022, the defendant was convicted of all counts following a jury trial (ECF 116). On September 16, 2022, Williams was sentenced to the following:

> **Count One – 18 U.S.C. § 1512(c)(2):** Sixty (60) months of incarceration to run concurrently, thirty-six (36) months of supervised release to run concurrently, and $100 special assessment.
>
> **Counts Two and Three – 18 U.S.C. § 1752(a)(1) and (2):** Twelve (12) months of incarceration to run concurrently, twelve (12) months of supervised release to run concurrently, and $20 special assessment.
>
> **Counts Five and Six – 40 U.S.C. § 5104(e)(2)(D) and (G):** Six (6) months of incarceration to run concurrently and $10 special assessment.

Williams was also sentenced to a criminal fine of $5,000 and restitution in the amount of $2,000. *See* ECF 131. At sentencing, the Court added, over Williams's objection, eight offense levels to the Sentencing Guidelines calculation on Count One under U.S.S.G. § 2J1.2(b)(1)(B) because it found the offense involved causing or threatening physical injury to a person or property damage in order to obstruct the administration of justice, as well as three levels to the same count under § 2J1.2(b)(2) because the offense resulted in the substantial interference with the administration of justice, specifically the proceedings of Congress (ECF 131, 132).

Williams filed a notice of appeal the same day he was sentenced (ECF 133). On September 30, 2022, Williams moved in this Court for bond pending appeal (ECF 135). This Court denied the motion on two bases: first, that Williams's anticipated appellate challenge to his § 1512(c)(2) conviction failed to raise a substantial question of law or fact, and second, that even if his

§ 1512(c)(2) conviction was reversed, any "reduced sentence would not be 'less than the total of the time already served plus the expected duration of the appeal process'" (Minute Order 10/14/2022 (quoting 18 U.S.C. § 3143(b)(1))). Williams self-surrendered to the Bureau of Prisons on October 18, 2022. The government did not object to self-surrender.

On February 2, 2023, the D.C. Circuit granted Williams's unopposed motion to hold his appeal in abeyance pending that court's disposition of *United States v. Fischer*, No. 22-3083 (D.C. Cir.), which deals with statutory interpretation of 18 U.S.C. § 1512(c)(2). After the D.C. Circuit decided *Fischer* on April 7, 2023, on the parties' joint motion, the D.C. Circuit ordered that Williams's appeal continue to be held in abeyance pending issuance of the mandate in *Fischer*. On December 13, 2023, the Supreme Court granted certiorari in *Fischer*. *See Fischer v. United States*, No. 23-5572, 2023 WL 8605748 (U.S. Dec. 13, 2023). On February 1, 2023, Williams filed a motion for bond in the D.C. Circuit. On February 23, 2024, the D.C. Circuit denied that motion without prejudice to Williams moving for release in this Court under 18 U.S.C. § 3143(b). Williams filed the instant motion seeking release pending the outcome of *Fischer* on February 27, 2024.

On March 1, 2024, the United States Court of Appeals for the District of Columbia issued *United States v. Brock*, No. 23-3045, 2024 WL 875795 (D.C. Cir. Mar. 1, 2024), which held that the term "administration of justice," as used in U.S.S.G. § 2J1.2, does not apply to Congress's certification of electoral college votes. *See id.* at *8. The government then requested, and this Court granted, an extension of its time to respond to Williams's motion up to and including March 19, 2024, for the government to consider the impact, if any, of the *Brock* opinion on this motion (ECF 142; Minute Order, 3/11/2024).

3

## II. LEGAL STANDARD

Under 18 U.S.C. § 3143(b), a defendant who has been sentenced to a term of imprisonment "shall . . . be detained" unless the court finds that two separate requirements are met:

> (1) "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released," and
>
> (2) that the appeal "raises a substantial question of fact or law likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

18 U.S.C. § 3143(b)(1)(A)-(B). The requirements for "reversal" and "an order for a new trial" encompass all counts, not just a single count. *United States v. Perholtz*, 836 F.2d 554, 557 (D.C. Cir. 1988) (explaining that defendants "cannot be released unless the appeal raises a substantial question likely to result in reversal of *all counts* on which imprisonment is imposed") (emphasis supplied). If a judicial officer finds that a defendant is eligible for release because the appeal is "likely" to result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process," the remedy is not immediate release; rather, "the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." 18 U.S.C. § 3143(b)(1)(B). It is the defendant's burden to make the requisite showing under 18 U.S.C. § 3143(b)(1)(B). *Perholtz*, 836 F.2d at 555-56 (referring to "the required showing on the part of the defendant"); *United States v. Libby*, 498 F. Supp. 2d 1, 3 (D.D.C. 2007).

## III.  ARGUMENT

Even assuming that the *Fischer* issue and any future challenge to Williams's sentence under *Brock* raise "substantial question[s]," Williams fails to make the required showing for release.[2]

*First*, Williams is unable to show by clear and convincing evidence that he is not a danger to the community.[3] As the Court noted at sentencing, on January 6, 2021, Williams was "far from . . . an unwilling member of the crowd" that overran the Capitol; he was an active participant in "facilitating a riot that overwhelmed law enforcement and succeeded in disrupting the proceedings of Congress to certify the 2020 presidential election." Sentencing Hearing Transcript ("Tr.") at 78, 76. Prior to January 6, Williams made prolific posts on social media that included language this Court described as "totally militaristic" and "downright chilling," expressing his belief that the 2020 presidential election was rigged, urging that Democrats be hung for treason, and calling for war. *Id.* at 89. Williams acted on the rhetoric of those posts when he came to the Capitol on January

---

[2] Williams's motion, which was filed before the D.C. Circuit issued its opinion in *Brock*, is based only on *Fischer* (ECF 140), and Williams has not filed any amended motion addressing *Brock*. Furthermore, because Williams's appeal was held in abeyance before he filed his appellate brief, it is unclear whether Williams intends to challenge the application of U.S.S.G. §§ 2J1.2(b)(1)(B) and (b)(2) in his appeal, although Williams did object to application of those enhancements at sentencing. Nonetheless, the government acknowledges that, in light of *Brock*, any future challenge Williams makes to his sentence based on application of those enhancements would pose a substantial question, as required under the first prong of § 3143(b)(1)(B).

[3] The government's opposition to Williams's previous motion for bond pending appeal under 18 U.S.C. § 3143(b)(1) (ECF 136) did not address one way or another the questions of whether Williams had demonstrated "by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released" or "that the appeal is not for purpose of delay" because it argued, successfully, that Williams had failed to satisfy his burden as to the statute's remaining requirement "that the appeal raises a substantial question of law or fact likely to result in . . . a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

6, where, even before entering the building, he witnessed repeated assaults on police officers on Capitol grounds. *Id.* at 76. He then assisted other rioters in accessing the upper west terrace by positioning a bike rack to help them scale the stairs, forcing officers to retreat. *Id.* at 77. He celebrated that breach in a video in which he stated, "We have just stormed the stairs of the Capitol, pushed the cops back and were maced and pepper sprayed, and hit everybody. Fuck that, we took this fucking building." *Id.*; *see also* ECF 132. Williams was then among the first wave of rioters to enter the Capitol after the breach of the Senate wing door, after which he proceeded to the Crypt, where he "walked purposely toward the line of the confrontation with the police officers" and became "an aggressive part of the mob that helped overrun those police officers." Tr. 87-88. He then headed to the Rotunda, where he lit up a marijuana joint and began to smoke "as if this were a party," filming video of himself boasting "we took the fucking building" and "Trump 2020, motherfucker," "still pushing for an overturning of the presidential election." *Id.* at 88. He "sought out even more conflict once he was inside the Rotunda, linking arms with other rioters against the police line." *Id.*

Making matters worse, Williams's troubling conduct persisted after January 6. The Court found that he "was dissembling and lying on the stand at several points" during his testimony at trial, and that although Williams "claimed at trial to feel remorse for his actions on that day, his posts in the months after the attack and his denials of his conduct at trial show otherwise." *Id.* at 91.[4] The Court recognized that this persistent conduct rendered Williams a danger to the community when it refused to include community service as a component of his sentence, noting

---

[4] The Government did not request, and the Court did not apply, U.S.S.G. § 3C1.1, which provides a two-level enhancement for obstruction of justice with respect to the prosecution of the defendant's instant conduct. *See* Tr. 91. Nevertheless, the Court noted for the record that "[t]he jury clearly didn't believe" his testimony at trial, "and neither did I." *Id.* at 90.

that his dissembling on the stand and his statements on social media made the Court "hesitant . . . that this is a person who we want to be sending out into the community." *Id.* at 67.

Although Williams was on release pretrial and prior to his self-surrender without any violation of his bond conditions, that fact alone does not mean that Williams does not present a danger to the community now, particularly given the nature of his convictions and the heated political environment present in the country today. As this Court has acknowledged, *see United States v. Rubenacker*, 21-cr-193 (BAH) (ECF 95), the country has entered a contentious election year, and the Court has no assurance that the heated political environment will not again drive Williams to break the law and attack officers in order to see his preferred candidate win.

*Second*, Williams is unable to show by clear and convincing evidence that he is not a flight risk. Unlike when he was last on release, he now knows the day-to-day reality of confinement in prison. He has served just over seventeen months of his sixty-month sentence, leaving the majority of that time still to serve in the future. Having this time hanging over his head may make it more likely that he will decide to flee. The government certainly appreciates this Court's prior findings in *Bledsoe* on this point, *see* 21-cr-204-BAH (ECF 260) at *7, but unlike Bledsoe, Williams has contacts abroad that could increase the likelihood he flees. On the one-year anniversary of the January 6 riot, while out on pretrial release, Williams filed a motion for permission to travel to Jamaica for ten days to visit his girlfriend's family (ECF 28). The Court denied that motion (Minute Order, 1/6/2022) and noted at sentencing that Williams's request to travel undermined his claims that he needed to be home to care for his mother and to support her financially, *see* Tr. 63-65.[5]

---

[5] The Court imposed a criminal fine despite Williams's claim that he was a financial caretaker to his mother, "particularly since he has more money available to him from not filing his federal income tax returns" since 2019. Tr. 84-84.

*Third*, Williams fails to meet the second prong of the § 3143(b) test. Assuming that a *Fischer*-related appeal raises a "substantial question," and further assuming that a potential challenge to Williams's sentence under *Brock* does as well, Williams still cannot show that a reversal in *Fischer* and/or application of *Brock* is likely to lead to a reversal of his conviction, an order for a new trial, or a non-jail sentence on all counts, given that there are other counts of conviction not at issue in *Fischer* and *Brock*: Counts 2-3 (18 U.S.C. §§ 1752(a)(1) and (2)) and Counts 4-5 (40 U.S.C. § 5104(e)(2)(D) and (G)).

Nor does defendant show that reversal in *Fischer* and/or application of *Brock* is "likely" to lead to "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." This Court provided a thorough accounting at sentencing of "[t]en different aspects of the defendant's history and his offense conduct" that supported its imposition of a sixty-month sentence in this case, including the severity of Williams's conduct on January 6, his "chilling and dangerous" social media posts, his lack of candor on the witness stand, his lack of remorse, and, notably, his "extensive criminal history, even though that history is not reflected in his Criminal History Category" based on the Sentencing Guidelines. Tr. 87-91. Although Williams had no prior convictions within the past ten years at the time of sentencing, the Court noted that "he has a long list of encounters with law enforcement over his adult life," among them "some eyebrow-raising, problematic, serious convictions, including for arson," that had "been met with slaps on the wrist" and "escalated in the current engagement in political mob action and a felony conviction." *Id.* at 80-81; *see also id.* ("The long and short of it is, from looking at his criminal history, he has not led a law-abiding life; and his conduct on January 6th was no aberration."). The Court appropriately concluded that a "custodial sentence of significance" was necessary "when defendant's prior contacts with the criminal justice system with

8

repeated wrist slaps have not sent the message that this defendant needs to comply with the law." *Id.* None of the facts underlying the ten factors the Court discussed at sentencing would be any different at a resentencing to account for the outcomes of *Fischer* and/or *Brock*. Moreover, the underlying facts, coupled with the defendant's conduct leading up to and in trial, are far different than those considered in *Bledsoe*. *See* 21-cr-204-BAH (ECF 260) at *11 (noting the defendant's lack of criminal convictions, his ongoing business, and his increased cooperation with respect to pretrial release).

Although *Brock* would reduce the applicable Sentencing Guidelines range for Williams's violation of § 1512(c)(2), that would not automatically result in a reduced sentence.[6] As this Court

---

[6] Similarly, Williams's sentence should not be further reduced under the new reduction for zero-point offenders under U.S.S.G. § 4C1.1, which took effect after Williams was sentenced, for two reasons.

First, Williams is ineligible for an adjustment under § 4C1.1(a)(3), which provides that the decrease in offense level only applies if, among other criteria, the defendant "did not use violence or credible threats of violence in connection with the offense." The Court found at sentencing that Williams had engaged in "violence or credible threats of violence" when it decided to apply the eight-level enhancement for "causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice" under § 2J1.2(b)(1)(B). Specifically, the Court found that Williams's "actions in the Crypt constituted threatening conduct; and that's not even counting what he did in the Rotunda where he joined in a face-off confrontation with police officers there," which was "also threatening conduct and escalated the situation." Tr. 40-41.

Second, even if Williams were eligible for the § 4C1.1 reduction, the Court should still exercise its discretion and refuse to lower his sentence still further, particularly in light of the fact that, although he has zero criminal history points under the Guidelines, Williams has what this Court described as "an extensive criminal record" and "has not led a law-abiding life." Tr. 81. *See* U.S.S.G. § 1B1.10 (before reducing a defendant's sentence, the court must "consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted" as well as "the extent of such a reduction." U.S.S.G. § 1B1.10 app. note 1(B)(i), (ii); *see also id.* Background ("The authorization of such a discretionary reduction ... does not entitle a defendant to a reduced term of imprisonment as a matter of right."). "The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). The § 3553(a) factors counsel against granting a sentence reduction here, including the unique nature of the January 6 riot and the substantial harm it caused, Williams's egregious conduct, and the significant need to deter future mob violence.

9

has recognized, it would be appropriate for the Court to vary upwards from the Guidelines "to account for the significant disruption of a critical and important governmental function" as a result of a defendant's conduct on January 6, even if the sentencing enhancements at U.S.S.G. § 2J1.2(b)(2) and by extension § 2J1.2(b)(1)(B)[7] do not apply. *See United States v. Bender*, No. 21-cr-508 (BAH) (ECF 161) at 3 n.1. Indeed, at any resentencing, the Court could apply an upward departure for "significant disruption of a governmental function" under U.S.S.G. § 5K2.7, or vary upward from the Guidelines range to account for the § 3553(a) factors, as is appropriate whenever "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308-09 (D.C. Cir. 2018) (cleaned up). The government did not previously seek an upward departure or upward variance because the enhancements that were available before *Brock* reflected the appropriate punishment for the offense; after *Brock*, those enhancements do not apply, and the Court must address a situation where the Guidelines no longer reflect the appropriate punishment.

By the same logic, even a reversal of Williams's § 1512(c)(2) conviction based on the ultimate outcome of *Fischer* would not necessarily reduce his sentence "to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process"—in this case, roughly twenty months, as a decision in *Fischer* is expected in mid-June—because, in the absence of a § 1512(c)(2) conviction, the government's sentencing recommendation would likely be different and could include a request for consecutive sentences on Williams's misdemeanor counts (up to thirty-six months). The government recognizes that this Court has

---

[7] *Brock* did not consider the eight-level enhancement in § 2J1.2(b)(1)(B), which applies if an offense "involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice." Nonetheless, the government acknowledges that the same reasoning the *Brock* court used to limit application of § 2J1.2(b)(2) would apply.

noted, in ruling on other motions for release pending appeal by Defendants convicted of § 1512(c)(2) and misdemeanor offenses arising from the January 6 riots, that "imposing consecutive sentences on the four misdemeanors would be a departure from both default practice under federal law, . . . and the position advanced by the government and adopted by this Court in the instant case." *Bledsoe*, No. 21-cr-204 (ECF 260) at *10; *Bender*, No. 21-cr-508 (ECF 161) at *12. The government's recommendation at sentencing in the instant case, however, did not call for consecutive sentences because the Sentencing Guidelines range applicable to Williams's § 1512(c)(2) charge was adequate to satisfy the purposes of sentencing, including general and specific deterrence and the need to avoid unwarranted sentencing disparities. The calculus on resentencing would necessarily change, and a reversal of the § 1512(c) conviction could increase the aggregate sentence on the remaining counts:

> [In cases] involv[ing] multicount indictments and a successful attack by a defendant on some but not all of the counts of conviction . . . the Government routinely argues that an appellate court should vacate the entire sentence so that the district court may increase the sentences for any remaining counts up to the limit set by the original aggregate sentence. And appellate courts routinely agree.

*Dean v. United States*, 137 S. Ct. 1170, 1176 (2017).

A decision in *Fischer* is expected by June 2024, approximately twenty months after Williams's reporting date. Therefore, if the Court were to impose consecutive sentences on Williams's misdemeanor convictions, the appeal in *Fischer* would likely be resolved before Williams would have finished serving his time on his other counts of conviction. Thus, a reversal of his § 1512(c)(2) count would not result in "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."[8] Even

---

[8] While the government expects a decision in *Fischer* in June, defendant's appeal of his own § 1512 conviction will not be resolved until some time after that. Once *Fischer* is decided, defendant can renew this motion if warranted.

if the Court believes that it is "likely" that the defendant would be resentenced twenty months or less, the remedy is not to release the defendant now, or to stay his incarceration entirely. Instead—and unlike with release based on a reversal, likelihood of trial, or non-jail sentence—the statute directs the Court to order the defendant released only once he has served the amount of time he is likely to serve upon resentencing, not immediately. 18 U.S.C. § 3143(b)(1)(B) ("in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated *at the expiration of the likely reduced sentence*") (emphasis supplied). Therefore, to release defendant based on the likelihood of a reduced sentence, the Court must calculate that reduced sentence, and defendant must still serve that amount of time before being released pending appeal. *See, e.g.,* May 25, 2023 Order, *United States v. Brock,* D.C. Cir. Case No. 23-3045 (denying motion for release pending appeal in January 6 case where "the district court did not specifically address what appellant's "likely reduced sentence" would be if his conviction under 18 U.S.C. § 1512(c) is reversed. Nor has appellant made that showing…").

## CONCLUSION

For all these reasons, the defendant's renewed motion for bond pending appeal should be denied.

                Respectfully Submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    */s/ Isia Jasiewicz*
                Monika (Isia) Jasiewicz
                Assistant United States Attorney
                D.C. Bar No. 102491
                U.S. Attorney's Office for the District of Columbia
                601 D Street, N.W.
                Washington, D.C. 20530
                (202) 714-6446
                isia.jasiewicz@usdoj.gov