UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 21-377 (BAH) |
| ANTHONY ROBERT WILLIAMS, | Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM AND ORDER**

The United States government moves to dismiss, with prejudice, the one-count Superseding Indictment, ECF No. 162, against defendant Anthony Williams. Gov't's Mot. to Dismiss Indictment with Prejudice Pursuant to Federal Rule Criminal Procedure 48(a) ("Gov't's MTD"), ECF No. 166. This defendant was initially found guilty, after a four-day jury trial, of all five federal charges against him, including one felony count for Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2, and four misdemeanor offenses, including Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Verdict Form at 1-2, ECF No. 116. Defendant's own words from January 6, 2021, captured on video, describe his conduct that day as "storm[ing] the stairs of the Capitol, push[ing] the cops back," getting "maced and pepper sprayed," and "hit[ting] everybody." Gov't's Trial Ex. 4.1; *see also* Gov't's Sentencing Mem. at 15, ECF No. 120 (quoting the video taken by defendant marked as Gov't Trial Ex. 4.1); Gov't's Rep. on Photo & Video Evid. Supp. the Gov't's Sentencing Mem. ("Video Evid.") at 2, ECF No.

1

128 (describing Gov't's Trial Exhibit 4.1). In case his words left any doubt, defendant proudly stated that "we took this fucking building"—referring to the United States Capitol. *Id.* In doing so, defendant's actions were motivated by his belief that the 2020 presidential election was stolen, *see* Gov't's Sentencing Mem. at 6-10 (summarizing the voluminous evidence presented at trial on this point), despite no evidence of any outcome-determinative election fraud ever having been uncovered, let alone confirmed, by any federal, state, or local government agency or in any court of law.

Notwithstanding the strong evidence of this defendant's criminal conduct, for the reasons explained below, the government's motion is granted in part and denied in part, and the pending indictment against defendant is dismissed without prejudice.

I. **BACKGROUND**

The evidence presented at trial showed that, immediately after the 2020 presidential election and in the months leading up to the certification of the Electoral College vote on January 6, 2021, the defendant in this case "was determined to go to Congress to overturn the results [of the election] on January 6, 2021," *see* Gov't's Sentencing Mem. at 6-10 (summarizing evidence), and used violent and militaristic language to refer to his anticipated actions to do so, *see id.* at 7 (collecting evidence of defendant's statements suggesting violence, including that Democrats "may end up hung for treason"); *id.* at 8 (describing defendant's statements claiming that "we'll take to war"); *id.* at 9 (discussing defendant's expressed intent to "Storm the Swamp," and describing additional evidence). On January 6, 2021, defendant and his friend joined the crowds marching to the Capitol after President Trump's "Stop the Steal" rally at the Ellipse, *see id.* at 10, and upon arriving, helped other rioters climb bicycle racks to ascend the Northwest stairs of the Capitol Building, *see id.* at 10-13 (summarizing video evidence, transcribing trial testimony, and

showing pictures). During this time, defendant described that his fellow rioters were "in a shoving match" with law enforcement officers and, in his own words, described the group as "rioting." *Id.* at 15 (quoting trial testimony). When the rioters successfully broke the line of law enforcement officers guarding the Northwest Stairs to the Capitol Building, defendant celebrated successfully pushing past the law enforcement line with other rioters. *Id.* After ascending the stairs to the Upper Northwest Terrace, defendant stole water bottles stashed for use by law enforcement officers. *See id.* at 15-16 (providing a picture and summarizing other evidence).

Defendant then entered the Capitol with the first large wave of rioters to breach the building. *Id.* at 16-17. Inside the Capitol, defendant joined a group of rioters confronting a line of law enforcement officers in the Crypt and helped the crowd breach the line. *See id.* at 17-19. At trial, the Assistant to the Secret Service Special Agent in Charge testified about the danger this and other actions posed to Vice President Pence. *Id.* at 19 (quoting trial testimony). Defendant then moved to the Capitol Rotunda, where he made statements such as "we took this fucking building," "desperate times, desperate measures," and "you gotta do whatchu gotta do when shit gets fucking desperate." *Id.* at 21 (quoting evidence from trial). When law enforcement officers instructed rioters to leave the Rotunda, and then had to use force to make them do so, defendant actively resisted the officers, pushing back against them. *See id.* at 21-23 (summarizing trial evidence about defendant's conduct in Rotunda). In the days, weeks, and months after the riots, defendant continued to brag about his actions on the day. *See id.* at 23-25 (quoting defendant's numerous statements).

At the close of the trial, defendant was found guilty on all of the charges against him. Verdict Form.

Defendant appealed his conviction, *see* Notice of Appeal, ECF No. 133, and moved for bond pending appeal, ECF No. 135, which motion was denied. After the Supreme Court granted certiorari to consider the D.C. Circuit's opinion in *Fischer v. United States*, 64 F.4th 329 (D.C. Cir. 2023), *cert. granted*, 144 S. Ct. 537 (2023), and *rev'd and remanded*, 603 U.S. 480 (2024), defendant renewed his motion for bond pending appeal, ECF No. 140, which motion was granted, Order, ECF No. 152; *see also United States v. Williams*, No. 21-cr-377, 2024 WL 1253949 (D.D.C. Mar. 25, 2024). In the wake of the Supreme Court's *Fischer* decision, the D.C. Circuit ordered that defendant's felony obstruction conviction be vacated, *see* Mandate of USCA, ECF No. 154, and the government advised that it was considering filing a potential new charge, *see* Joint Status Report, ECF No. 157. The government subsequently filed a Superseding Indictment, ECF No. 162, charging defendant with one felony count of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), *see id.*

Despite the government expending significant time and resources in identifying defendant, investigating his criminal conduct, filing two separate indictments against him, *see* Indictment, ECF No. 13; Superseding Indictment, ECF No. 162, proceeding to trial and securing convictions on all five counts against him, *see* Verdict Form, and vigorously contesting his motions for bond pending appeal, *see* Gov't's Opp'n to Def.'s Mot. for Bond Pending Appeal, ECF No. 136; Gov't's Opp'n to Def.'s Renewed Mot. for Bond Pending Appeal, ECF No. 143, the government now seeks to dismiss the pending Superseding Indictment against defendant under Federal Rule of Criminal Procedure 48(a), *see* Gov't's MTD.

**II.   DISCUSSION**

Courts have limited power when the federal government decides to stop prosecuting a criminal defendant. *See, e.g.*, *Wayte v. United States*, 470 U.S. 598, 607-08 (1985) (recognizing

4

the government's broad prosecutorial discretion); *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016) (recognizing same prosecutorial discretion in "decisions to dismiss pending criminal charges").  At the same time, the Supreme Court and D.C. Circuit have both recognized that the "leave of court" requirement in Rule 48(a) "obviously vest[s] some discretion in the court."  *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977); *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) (noting that this rule "gives the court a role in dismissals following indictment").  This discretion is granted in part to "guard[] against abuse of prosecutorial discretion."  *Ammidown*, 497 F.2d at 620.  To ensure that the government's request for dismissal of criminal charges "sufficiently protects the public," the government may be required to submit "a statement of reasons and underlying factual basis," which must be "substantial" to justify the dismissal and not "a mere conclusory statement."  *Id.*

    Here, the government's cursory motion provides *no* factual basis for dismissal.  Instead, the single paragraph explanation included in the one-page dismissal motion cites "as the reason for this dismissal," only a presidential proclamation "dated January 20, 2025, Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021."  Gov't's MTD at 1.  This cited proclamation, *inter alia*, directs the Attorney General "to pursue [the] dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021."  *See* PROCLAMATION, (Jan. 20, 2025) (capitalization in original), available at https://www.whitehouse.gov/presidential-actions/2025/01/granting-pardons-and-commutation-of-sentences-for-certain-offenses-relating-to-the-events-at-or-near-the-united-states-capitol-on-january-6-2021/.  The only reason provided for this instruction, as set out in the Proclamation's introduction, is the assertion that this action "ends a grave national injustice that

5

has been perpetrated upon the American people over the last four years and begins a process of national reconciliation." *Id.*

No "national injustice" occurred here, just as no outcome-determinative election fraud occurred in the 2020 presidential election. No "process of national reconciliation" can begin when sore losers, whose preferred candidate loses an election, are glorified for disrupting a constitutionally mandated proceeding in Congress and doing so with impunity. That merely raises the dangerous specter of future lawless conduct by other sore losers and undermines the rule of law. Yet, this presidential pronouncement of a "national injustice" is the sole justification provided in the government's motion to dismiss the pending indictment. *See* Gov't's MTD.

Having presided over scores of criminal cases charging defendants for their criminal conduct both outside and inside the U.S. Capitol Building on January 6, 2021, which charges were fully supported by evidence in the form of extensive videotapes and photographs, admissions by defendants in the course of plea hearings and in testimony at trials, and the testimony of law enforcement officers and congressional staff present at the Capitol on that day—**including at the trial of this defendant**—this Court cannot let stand the revisionist myth relayed in this presidential pronouncement. The prosecutions in this case and others charging defendants for their criminal conduct at the U.S. Capitol on January 6, 2021, present no injustice, but instead reflect the diligent work of conscientious public servants, including prosecutors and law enforcement officials, and dedicated defense attorneys, to defend our democracy and rights and preserve our long tradition of peaceful transfers of power—which, until January 6, 2021, served as a model to the world—all while affording those charged every protection guaranteed by our Constitution and the criminal justice system. Bluntly put, the assertion offered in the presidential pronouncement for the pending motion to dismiss is flatly wrong.

Still, the D.C. Circuit has cautioned that a district court judge has "no power" "to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority." *Fokker*, 818 F.3d at 742; *id.* at 737 ("It has long been settled that the Judiciary generally lacks authority to second-guess those Executive determinations, much less to impose its own charging preferences."). Despite finding that the sole reason relied upon by the government to dismiss the charges in this case—*i.e.*, an incorrect assertion in the presidential proclamation—is neither substantial nor factually correct, the government's view of the public interest does not clearly fall within the types of reasons found to provide legitimate grounds to deny the government's Rule 48(a) motion to dismiss charges. *See United States v. Flynn*, 507 F. Supp. 3d 116, 130-31 (D.D.C. 2020) (collecting examples where a government motion to dismiss should be denied as not serving "legitimate prosecutorial interests," because the motion "was a sham or deception," "was based on 'acceptance of a bribe, personal dislike of the victim, and dissatisfaction with the jury impaneled,'" or was meant to favor "politically well-connected individuals" (citations omitted)). Therefore, the government's motion to dismiss the indictment is GRANTED.

Nothing about the government's reasoning for dismissal warrants entry of dismissal with prejudice, however. Dismissal with prejudice is a complete adjudication of the matter and would bar any further prosecution of defendants for their offense conduct at issue. *See Brown v. Amtrak Corp.*, No. 03-7003, 2003 WL 22433755, at *1 (D.C. Cir. Oct. 27, 2023) ("A dismissal 'with prejudice' is a final judgment on the merits which bars further litigation between the same parties." (citing *Bd. of Trs. of the Hotel & Rest. Emps. Local 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1489 n.20 (D.C. Cir. 1996))); *Reed v. Farley*, 512 U.S. 339, 368 (1994) (Blackmun, J., dissenting) ("The dismissal with prejudice of criminal charges is a remedy rarely seen in criminal law, even

7

for constitutional violations."). This result would be improper here, where the evidence presented at trial and relied on by the jury to find this defendant guilty beyond a reasonable doubt provides ample basis for criminal prosecution. *See also Thorp v. District of Columbia*, 142 F. Supp. 3d 132, 145 (D.D.C. 2015) (noting that dismissal with prejudice "reflect[s] on the merits of the underlying action" (quoting *Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. Cir. 1986), and citing *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 42 (D.D.C. 2015)). Instead, the government's reliance on a policy assertion made in the presidential proclamation that such prosecutions should not be continued warrants only "render[ing] the proceedings a nullity and leav[ing] the parties as if the action had never been brought," *Magliore v. Brooks*, 844 F. Supp. 2d 38, 46 (D.D.C. 2012) (quoting *Thoubboron*, 809 A.2d at 1210), which is achieved by granting the government's motion to dismiss *without* prejudice, *see id.*

### III. CONCLUSION AND ORDER

For the reasons above, the government's motion to dismiss, ECF No. 166, is granted to the extent that the Superseding Indictment, ECF No. 162, against defendant is dismissed, but denied as to the request that this dismissal be "with prejudice." Accordingly, it is hereby—

**ORDERED** that the Superseding Indictment against defendant, ECF No. 162, is dismissed without prejudice; it is further

**ORDERED** that the status conference scheduled for January 24, 2025, is **VACATED**; it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

Date: January 22, 2025

_____
**BERYL A. HOWELL**
United States District Judge